IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 15, 2004

## HARRY M. NIMMONS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 76886     Richard Baumgartner, Judge**

---

**No. E2003-02513-CCA-R3-PC - Filed July 26, 2004**

---

The petitioner, Harry M. Nimmons, appeals the Knox County Criminal Court's denial of his petition for post-conviction relief from his guilty pleas to three counts of possessing with the intent to sell less than one-half gram of cocaine and resulting effective sixteen-year sentence. He contends that he received the ineffective assistance of counsel because he would have gone to trial if his attorneys had explained evidentiary issues to him. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Harry M. Nimmons.

Paul G. Summers, Attorney General and Reporter; Michelle Chapman McIntire, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Marsha Mitchell, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case relates to the petitioner's arrests for possessing cocaine with the intent to sell on November 1, 1998; January 11, 1999; and March 8, 2001. At the guilty plea hearing, the state presented the following factual account of the crimes: On November 1, 1998, police officers received a complaint of a person selling drugs and after being given a description of the drug dealer, went to the area where the drugs were being sold. The police saw the petitioner, who matched the description of the drug dealer. When they approached the petitioner, he threw thirteen rocks of cocaine onto the ground. The officers found $370 and a pager when they searched the petitioner. On January 11, 1999, the police were executing a search warrant at a home in which the petitioner was located. When the police arrived, he ran toward the bathroom. He was tackled in the hallway by the police and the petitioner threw down a plastic bag containing five to six rocks of crack cocaine. When the police searched the petitioner, they found $197. On March 8, 2001, the petitioner

was observed standing and fidgeting next to his car in the parking lot at Townview Terrace. When police arrived, he was sitting in the passenger seat of his car and crack cocaine was later found underneath the car. The car was located within one thousand feet of a school.

At the evidentiary hearing, the petitioner testified that his attorneys never discussed the likelihood that the state could prove that he had intended to sell cocaine in each of the three cases. Regarding his arrest on November 1, 1998, the petitioner stated that the police did not have a warrant for his arrest. He said he never discussed with his attorneys whether the description given to the police of the person selling drugs was sufficient for them to have probable cause to seize him. He said that in the case in which the police arrested him at a home, they did not have a warrant to arrest him at that time and said his attorneys did not discuss whether the police had probable cause to arrest him at the house. He said that when he was arrested in the Townview Terrace parking lot, the police did not discover the cocaine underneath his car until after he was already in custody on another matter. He said his attorneys never discussed with him whether the police had the authority to look underneath his car. He said the cocaine was found underneath, not inside, his car. He said no one else was in the vicinity of his car when the cocaine was found underneath it. He stated he never discussed with his attorneys the problems that the prosecution might have in proving he was the person who possessed the cocaine. He said that if he had discussed suppression issues with his attorneys, he would not have pled guilty. He also said he would have gone to trial if they had discussed the problems the state might have in proving he intended to sell the cocaine.

On cross-examination, the petitioner testified that he pled guilty because his attorneys told him that they could not help the petitioner at trial and because he believed his attorneys were acting in his best interests. He acknowledged that he was originally charged with a Class A and a Class B felony and that his attorneys explained that he was getting a break with the reduced charges in the plea offer. He acknowledged that he was on bail when each of the three offenses occurred and would have to serve his sentences consecutively. He said he received a fair plea agreement based on the potential sentence he could have received if he went to trial. He denied that he threw thirteen rocks of cocaine onto the ground on November 1, 1998. He said that he met with his attorneys five to six times and that they went over each case with him. He said that he told them he wanted to go to trial but that he pled guilty because his attorneys said they could not do anything for him at trial. He said he did not know if his attorneys had filed any motions to suppress evidence.

One of the petitioner's trial attorneys testified that he and his partner began representing the petitioner around May of 2000. He said the petitioner's other attorney had represented him since he was arrested on November 1, 1998. He said that once the petitioner retained him, he worked with his partner to resolve the criminal charges against the petitioner. He said he met with the petitioner five to eight times in addition to their meetings at court appearances. He said he discussed suppression issues with the petitioner as he did with every client involved in drug-related cases. He said he told the petitioner that the likelihood of success at a suppression hearing was slim.

The attorney testified that when the trial dates for the first two cocaine charges were close, he knew that if a plea agreement was going to be reached, it needed to happen quickly. He said the

prosecution told him that if they were forced to try each case individually, they would seek the maximum sentence for each conviction. He said that the petitioner was originally charged with one Class A felony, one Class B felony, and several other criminal charges and that he was facing more than thirty-three years in prison if convicted. He said that he received a plea offer from the state in which the petitioner could plead guilty to three Class C felonies and that he discussed this offer thoroughly with the petitioner. He said that he had a good relationship with the petitioner and that the petitioner asked him many questions about the plea offer. He said he strongly recommended that the petitioner accept the offer. He said that in a separate case, he pursued a suppression issue for the petitioner and the state eventually agreed to dismiss that case. He said he told the petitioner that the ultimate decision as to whether or not to accept the offer was the petitioner's but that he would likely lose at trial. On cross-examination, the attorney acknowledged that he could only remember specific conversations with the petitioner on suppression issues for the case in which the petitioner was charged with a Class A felony. He did not remember any conversations regarding an argument that the petitioner only possessed the cocaine for personal use.

The trial court found that the petitioner's attorneys adequately discussed the case with the petitioner and that the petitioner fully understood his guilty plea. The trial court further found that the petitioner had been fully involved in his cases. It denied the petition for post-conviction relief.

The petitioner claims that he had no choice but to plead guilty because his attorneys never explained suppression issues to him. He argues that if his attorneys had explained suppression issues that he could have raised before trial, he would not have pled guilty. The state claims that the petitioner's attorneys were not ineffective. We agree with the state.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy

or tactical choices if they are informed ones based upon adequate preparation. See Hellard, 629 S.W.2d at 9; DeCoster, 487 F.2d at 1201.

The burden is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-210(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

In the present case, the petitioner is essentially asserting that we should accept his testimony over that of his trial counsel. The trial court's findings reveal that it resolved the issue of credibility in favor of trial counsel. Although, as the petitioner asserts, the trial court never specifically stated that it accredited the attorney's testimony that he discussed suppression issues with the petitioner, it is obvious from the record of the court's statements at the evidentiary hearing that it was, in fact, accrediting the attorney regarding this issue. The trial court stated that it accredited the attorney in "this matter" and within a few sentences noted that the attorney had testified that he discussed suppression issues with the petitioner. Also, although the attorney acknowledged that he did not remember specific conversations with the petitioner about suppression in two of the cases, he said that he always discussed suppression issues with his clients in drug-related cases. The petitioner received a much lower sentence than he might have received had he gone to trial. The attorney stated that he received a good sentence and the petitioner agreed that his sentence was fair. We conclude, as did the trial court, that the petitioner's attorneys discussed suppression issues with him before he pled guilty and that his decision to plead guilty was informed. The petitioner has not shown that his attorneys were ineffective.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE

-4-